UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DANG CAO VU, | |
| Petitioner, | |
| v. | CAUSE NO. 3:25cv999 DRL-SJF |
| BRIAN ENGLISH, | |
| Respondent. | |

OPINION AND ORDER

Immigration detainee Dang Cao Vu filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, arguing he is being unlawfully detained in the custody of United States Immigration and Customs Enforcement (ICE). The respondent answered the petition, and Mr. Vu replied. For the following reasons, the court grants the petition.

Mr. Vu entered the United States as a refugee from Vietnam and became a lawful permanent resident in 1985 at the age of five. In 1998, when he was 18 years old, he was convicted of drug and firearm charges and sentenced to prison for two years and nine months. When he was released, Mr. Vu was placed in immigration detention under ICE custody. He received a final order of removal in 2002. After approximately 8 months in ICE detention, Mr. Vu was released on an order of supervision because, he says, his removal to Vietnam was not significantly likely in the reasonably foreseeable future.

The respondent does not dispute that from 2002 to 2025, Mr. Vu complied with every term of his supervised release. During that time, Mr. Vu married a United States

citizen in 2008 and had a daughter. He and his family run a nail salon in Massachusetts and own a rental property.

On May 20, 2025, ICE arrested and re-detained Mr. Vu. He asserts ICE did not give him a reason for his re-detention or provide him the opportunity to contest his re-detention. He maintains that he did not violate any condition of his release, and the revocation notice stated, "Your case is under current review by the Government of Vietnam for the issuance of a travel document." Mr. Vu argues this could not be true because ICE did not ask him to complete and submit a travel document request (a Form I-217) until June 30, 2025, more than a month after he was detained.

Furthermore, Mr. Vu points to findings of fact from a habeas case in another court involving a pre-1995 Vietnamese refugee that provides a recent snapshot of repatriation agreements between the United States and Vietnam. *See Nguyen v. Hyde*, 788 F. Supp. 3d 144 (D. Mass. 2025). According to that case, in 2008, "the United States and Vietnam entered into a repatriation agreement, but the agreement did not have a provision to accept any Vietnamese citizens, like [the petitioner], who arrived in the United States before July 12, 1995." *Id.* at 147. Then, in 2020, the United States and Vietnam signed a Memorandum of Understanding regarding removal to Vietnam of those Vietnamese citizens who arrived in the United States before July 12, 1995. *Id.* at 148. Under the Memorandum of Understanding, for an individual to be eligible for acceptance of return, the following conditions must be met:

> 1. Has Vietnamese citizenship and does not have citizenship of any other country at the same time;

> 2. Has violated U.S. law and has been ordered removed by a U.S. competent authority (and, if sentenced to a prison term, the individual must have completed any term of imprisonment before removal or a U.S. competent authority must have ordered a reduction in the sentence or the individual's release from prison);
>
> 3. Resided in Viet Nam prior to arriving to the United States and currently has no right to reside in any other country or territory.
>
> 4. [REDACTED]

*Id.* In addition, the government attested that 44 individuals were removed to Vietnam in fiscal year 2024, and 285 were removed in fiscal year 2025. *Id.* at 151. The district court concluded this information did not establish a change in circumstances such that there was now a substantial likelihood that removal was reasonably foreseeable. The government didn't identify which of the 328 removed individuals were pre-1995 Vietnamese refugees, like the petitioner, and the number of people successfully removed was meaningless without knowing how many total travel document requests had been made. *Id.* at 151-52. The district court, therefore, granted the habeas petition and ordered the petitioner released immediately subject to the conditions of the preexisting order of supervision. *Id.* at 152-53.

In answering Mr. Vu's petition, the respondent doesn't provide evidence contesting that Mr. Vu was released from ICE custody in 2002 because removal was not reasonably foreseeable. Instead, the respondent argues that this has not been established because Mr. Vu did not produce the release document he received more than 20 years ago. The respondent (or at least the agency who assists with filing the response) has access to Mr. Vu's immigration file and could, just as easily, produce the document if it

3

contradicted Mr. Vu's assertion. The respondent does not address the information provided about repatriation efforts between the United States and Vietnam regarding pre-1995 refugees. Nor does the respondent explain what happened with the travel document request Mr. Vu filled out in June 2025.

Instead, the respondent provides an affidavit, attesting that on November 3, 2025, ICE submitted a formal request for travel documents on behalf of Mr. Vu to the Vietnamese embassy in Washington D.C., that Vietnam is "regularly issuing" travel documents through this process, and that there are ongoing removals of noncitizens to Vietnam. The respondent argues the court lacks jurisdiction over the petition, Mr. Vu's detention is authorized by 8 U.S.C. § 1231(a), and his removal is reasonably foreseeable because the travel document request to the Vietnamese embassy has not been denied. The court will address these in turn.

The respondent first argues this court lacks subject matter jurisdiction to hear Mr. Vu's petition, contending that 8 U.S.C. § 1252(g) strips this court of jurisdiction over it. Section 1252(g) states that, except as provided in this section, no court shall have jurisdiction to hear any case, including in habeas, "on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The respondent argues Mr. Vu's detention falls under the decision to execute his removal order, so the court must dismiss the petition.

Section 1252(g) does not reach as broadly as the respondent claims. Section 1252(g) "applies only to three discrete actions that the Attorney General may take: her decision

4

or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482 (1999) (quotations omitted). Nearly three decades after this decision from the Supreme Court, it remains "implausible" that mentioning these three discrete events "was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality) ("We did not interpret this language [in § 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). Instead, "§ 1252(g) is applicable only where the alien's well-pleaded complaint is based on one of § 1252(g)'s three listed factors." *Fornalik v. Perryman*, 223 F.3d 523, 531 (7th Cir. 2000). Here, Mr. Vu's petition does not challenge ICE's power to remove him to Vietnam; the issue is whether he will be detained while those efforts are ongoing. The court thus retains jurisdiction to decide this petition.

The respondent additionally argues 8 U.S.C. § 1252(b)(9) is a jurisdictional bar to Mr. Vu's habeas corpus petition. Under this statute, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). This acts as a "zipper clause," funneling a noncitizen's claims about his removal to one court at the end of the removal proceedings. *See Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 483. The respondent contends that re-detaining a noncitizen for purposes of removal constitutes "an

5

enforcement mechanism of a removal order" such that review of this claim is available only in judicial review of a final order, which § 1252(a)(5) dictates must be brought directly in the court of appeals.

The respondent's interpretation of § 1252(b)(9) would render Mr. Vu's detention effectively unreviewable because he does not seek to challenge a final order of removal. *See Jennings*, 583 U.S. at 292-93 (plurality) (concluding § 1252(b)(9) did not bar habeas petition challenging no-bond detention during removal proceedings because the legal question regarding no-bond detention did not "arise from" the actions taken to remove the noncitizen); *see also Nasrallah v. Barr*, 590 U.S. 573, 582 (2020) ("final orders of removal encompass only the rulings made by the immigration judge or Board of Immigration Appeals that affect the validity of the final order of removal"); *Torres-Tristan v. Holder*, 656 F.3d 653, 658 (7th Cir. 2011) (concluding a "final order of removal" includes the actual order of removal and "all orders closely related to the deportation proceeding and entered during the proceeding" but not "ancillary determinations made outside the context of a removal proceeding" that are not "intimately associated and immediately associated with the final order" or "governed by the regulations applicable to the deportation proceeding itself, and ordinarily presented to the . . . immigration judge who entered the deportation order") (cleaned up). The question about the lawfulness of Mr. Vu's re-detention is distinct and does not arise from "any action taken" to remove him from the United States. Thus, the court has jurisdiction to address this petition.

On the merits, the respondent argues that Mr. Vu's detention is authorized by 8 U.S.C. § 1231(a)(6). Under this statute, all noncitizens must be detained for a 90-day

"removal period," which for Mr. Vu began in 2002 when his removal order became administratively final. *See* 8 U.S.C. § 1231(a)(1), (a)(2)(A). Beyond that 90-day period, § 1231(a)(6) authorizes the detention of noncitizens (1) who are inadmissible under 8 U.S.C. § 1182; (2) who are removable under 8 U.S.C. §§ 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4); and (3) whom the Attorney General has determined to be a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6). For those noncitizens, which include Mr. Vu, they "may be detained beyond the removal period[.]" 8 U.S.C. § 1231(a)(6). For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, the statute instructs that they be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

Given his criminal conviction, Mr. Vu's detention years ago fell within the ambit of § 1231(a)(6); if at all today, his redetention (or continued detention) must likewise fall within this statute because the government advances only this statute as the basis for it. His original detention remained subject to the constitutional limits set forth in *Zadvydas v. Davis*, 533 U.S. 678 (2001), which guard against the possibility of a noncitizen's indefinite detention when his removal cannot be carried out. In *Zadvydas*, to avoid a constitutional problem with the statute, the Supreme Court read § 1231(a)(6) to "limit[] an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689.

*Zadvydas* emphasized that § 1231(a)(6) could not be read to permit "indefinite detention." *Id.*; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized

7

by statute." *Zadvydas*, 533 U.S. at 699. The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 701. But after this six-month period, and "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86. Today's case is thus more involved than merely citing § 1231(a)(6) as the basis for continued detention.

The respondent contends that Mr. Vu's current detention, which has now exceeded six months, is permissible under *Zadvydas* because it comports with the statute's "basic purpose" of "assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. The respondent argues that, under *Zadvydas*, Mr. Vu bears the burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" before the government must rebut that showing. *Id.* at 701. The respondent argues Mr. Vu has not met his burden to show removal is not reasonably foreseeable, so his detention is permissible.

To a put a finer point on these arguments, the respondent says Mr. Vu has not provided facts showing that ICE lacks the capability to execute his reinstated removal order, nor does he point to an inability to obtain travel documents. The respondent argues it is not enough for Mr. Vu to allege broadly that Vietnam is unlikely to accept him based on past practices. The respondent argues Mr. Vu's statement that there is a long history

of Vietnam refusing to repatriate its nationals from the United States is a generalized, conclusory statement that is insufficient to meet the burden imposed by *Zadvydas*.

Despite the old adage, the court agrees with the general proposition that past isn't always prologue in this context—in other words, just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. But the government's rebuttal just hasn't been supported sufficiently to authorize Mr. Vu's continued detention. For one, the respondent fails to address the fact that Mr. Vu already met his burden in 2002 when he was released from custody because removal was not reasonably foreseeable. Nothing in *Zadvydas* suggests that the mere passage of time erases this initial showing or requires a noncitizen to renew this showing periodically to stay out of detention. Instead, *Zadvydas* means that, once this showing has been made, the burden remains on the government to rebut it for a noncitizen to be continuously detained (or re-detained) for that purpose.

For another reason, the record of Mr. Vu's showing has not materially changed, and arguably improved. The two arguable purposes of continued detention—civil in nature as it is—are "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Id.* at 690 (cleaned up). Proposing the first aim to help the government seems rather tokenish, if not weak here, when removal seemingly remains a mere work in progress, when there has not been any record of flight in decades, and when Mr. Vu has complied with his supervision order to the letter. The government may have newly applied for travel documents, but there is no indication if this might occur or when this might occur when nothing has materialized since 2002 or since

9

renewed efforts in 2025. Circumstances may change, but nothing today suggests that Mr. Vu's original showing—that his removal was not reasonably foreseeable, one adopted by immigration officials and accepted for years—has lost its foothold.

The second aim of preventing danger to the community, a perfectly laudable goal and no less so when someone has been convicted of firearm and drug charges, justifies detention "only when limited to specially dangerous individuals and subject to strong procedural protections." *Id.* at 691. Even then, often detention lasts only for a time, for a "potentially *indefinite* duration" based on dangerousness must be "accompanied by some other special circumstance, such as mental illness, that helps to create the danger." *Id*. The public's protection doesn't necessarily diminish in force merely because time passes, *see id.* at 690, but it would be difficult to call an approximately 45-year-old family man who runs a nail salon in Massachusetts in 2026 as presenting the same danger as he might have presented during his serious criminal convictions as an 18-year-old in 1998, not least when there has been no other special circumstance offered by the government.

The respondent instead focuses on the prospect of travel documents. The respondent notes that, though Mr. Vu alleges he completed a Form I-217 on June 30, 2025, providing information necessary for a travel document, he does not say when it was allegedly denied or attach any such denial as an exhibit. This seems to displace the burden; even so, the respondent (or those answering for him) would have ready access to Mr. Vu's immigration file as well and would likely be better positioned to know the status of this Form I-217. If in fact circumstances had changed or Mr. Vu's removal were imminent or satisfactorily foreseeable, then it would seem the government would be able

10

both to say it and show it. True, the respondent points to a November 3, 2025 travel document request, but no one for the government advises why this means that removal is reasonably right around the corner or why this request will fare better in the face of a longstanding history of handling pre-1995 Vietnamese refugees differently. Nor has the government said as much since it field its return last month. Recent or ongoing removals of noncitizens to Vietnam may show some promise for the government's view, but no one tailors that specifically to Mr. Vu's circumstances to know whether he might be one among them.

Without being dismissive of any worthy goals and policies that might be promoted through the concerted enforcement of our immigration laws, those laws that exist, exist—and they apply to noncitizens and the government alike. All must abide them, as written. The respondent has offered the court only one statutory basis for Mr. Vu's continued detention—§ 1231(a)(6)—but that falls short, on this record, of establishing a basis for it. *See Zadvydas*, 533 U.S. at 699 ("once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute"); *see also Suarez Martinez*, 543 U.S. at 386-87 (affirming district court's findings about what was or was not reasonably foreseeable). The parties also debate compliance with certain regulations, including 8 C.F.R. §§ 241.4 and 241.13, but not with an eye toward justifying Mr. Vu's continued detention, so the court need not reach these issues. There is no need to turn to these regulations when constitutional due process provides the governing law. The only thing left to do is to order Mr. Vu's release, on the same supervisory conditions as applied before, until such time as the government can justify a basis for his continued detention.

For these reasons, the court GRANTS the petition (ECF 1) to the extent that the court ORDERS the respondent to release Dang Cao Vu on the same conditions of supervision that existed before his re-detention and to certify compliance with this order by filing a notice with the court by **January 27, 2026**, and DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

SO ORDERED.

January 26, 2026                                            *s/ Damon R. Leichty*
                                                            Judge, United States District Court